**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Frederick SANDERS, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 20, 1999.

Filed Dec. 22, 1999.

Frederick Sanders, appellant, pro se.

Patricia E. Coonahan, Asst. Dist. Atty., Norristown, For Com., appellee.

Before CAVANAUGH and MUSMANNO, JJ., and CERCONE, President Judge Emeritus.

CAVANAUGH, J.:

¶ 1 Frederick Sanders appeals, *pro se*, from the order which denied, without a hearing, his petition for relief under the Post Conviction Relief Act (PCRA). We affirm.

¶ 2 The facts show that appellant was found guilty by a jury of robbery, theft and possession of an instrument of crime for his May 17, 1995, armed robbery of a Roy Rogers restaurant in Wyncote, Montgomery County. Appellant was subsequently sentenced to a term of from four to ten years incarceration. This court affirmed the judgment of sentence by memorandum and order filed September 12, 1997. No petition for *allocatur* review was filed. On September 8, 1998, appellant filed a *pro se* petition for PCRA relief. Counsel was appointed and after review of appellant's petition, counsel submitted a "no-merit" letter and petition to withdraw in accordance with *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988) and *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988). The court independently reviewed the record and agreed with counsel that the petition was meritless. Counsel was permitted to withdraw and the court filed its notice of intention to dismiss without a hearing on October 30, 1998. On November 19, 1998, the court entered a final order dismissing appellant's PCRA petition.

¶ 3 Appellant now appeals therefrom and asks whether the 1995 amendments to the PCRA are "violative of the Pennsylvania Constitution." "Our standard of review of a post-conviction court's grant or denial of relief is limited to whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Harmon*, 738 A.2d 1023–24 (Pa.Super. 1999) (citing *Commonwealth v. Walker*, 721 A.2d 380 (Pa.Super.1998)).

¶ 4 The Pennsylvania Constitution, Article 3, Section 12 provides: "When the General Assembly shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the Governor calling such session."[1] Appellant alleges that all 1995

---

1. The present text of Article 3, Section 12 is identical to the original text of Article 3, Sec-

amendments to the PCRA are null and void because they allegedly comprise legislation which exceeded the scope of the governor's proclamation of designated subjects to be addressed during special session. Specifically, appellant alleges, "Governor Thomas J. Ridge, on January 18, 1995, issued a proclamation calling for the General Assembly to convene at the Capitol in Harrisburg in Special and Extraordinary Session on Monday, January 23, 1995, at 1:00 p.m. to consider legislation on eleven (11) subjects *none of which related to the Post Conviction Relief Act*, 42 Pa. C.S.A. § 9541, *et seq.*" Appellant's Brief at 26.

¶ 5 After careful review, we reject appellant's claim. Special Session Number 1 of 1995, was convened on January 23, 1995, as a "Special Session on Crime" by proclamation of the governor who addressed the legislators in joint session that date and asked them to rewrite major portions of Pennsylvania's criminal laws. Included in the governor's massive legislative package was a call for the legislature's approval of 23 separate bills. That date, the House introduced and referred the 23 bills to committee. In an ongoing process throughout the following months, both houses of the legislature revised, amended and added numerous statutory provisions to the Crimes Code, the Sentencing Code and Judiciary Code.[2] Included in the new legislation were various amendments to the PCRA. Appellant now claims that the amendments to the PCRA were unconstitutionally fashioned outside the scope of the governor's call. We disagree and initially note that, with respect to this issue, appellant has not identified a challenge to any specific PCRA amendment or stated how his underlying conviction was affected by any alleged unconstitutionality or even how his collateral attack upon his conviction might have been prejudiced thereby.

¶ 6 The constitutional provision in question contemplates that:

[t]here shall first exist in the executive mind a definite conception of the public emergency which demands an extraordinary session. His mental attitude is expressed in his proclamation, the purpose of which is to inform the members of the legislature of subjects for legislation, and to advise the public generally that objections may be presented if desired. It is not only a guide or chart with respect to which the legislature may act, but also a check restricting its action so that rights may not be affected without notice. The proclamation may contain many or few subjects according to the governor's conception of the public need. While the subjects may be stated broadly or in general terms, the special business, as related to the general subject on which legislation is desired, should be designated by imposing qualifying matter to reduce or restrict. Although the subjects should be sufficient to evoke intelligent and responsive action from the legislature, it is not necessary that they include all the methods of accomplishment. The guiding principle in sustaining legislation of a special session is that it be germane to, or within, the apparent scope of the subjects which have been designated as proper fields for legislation. In construing a call the words of any portion thereof must be interpreted not only as commonly and universally understood, but also as applicable to the subject intended to be affected by the legislation.

*Commonwealth ex rel. Schnader v. Liveright*, 308 Pa. 35, 56–57, 161 A. 697, 703 (1932).

---

tion 25, as it appeared in 1874. By amendment of May 16, 1967, Article 3, Section 25 was renumbered as Article 3, Section 12.

**2.** As a result of the Special Session on Crime, and in response to the governor's call, the House introduced 137 bills and 9 resolutions and the Senate introduced 110 bills and 4 resolutions. Ultimately, the legislature enacted "34 specific measures to deal with the many faces of crime." Address by Governor Ridge, The Closing of the Special Session on Crime, October 31, 1995.

All [the cases] provide that the governor may confine the legislature, called in special session, to such subjects of legislation as he may prescribe .... All the cases agree that, while the governor may so limit the subjects of legislation, he cannot dictate to the legislature the special legislation they shall enact on those subjects. In all of them the inquiry is finally reduced to the ascertainment of the subject or subjects embraced in the call ... determined by an analysis and construction of that paper as in the case of any other written instrument, and by a like analysis and construction of the legislation drawn in question for the purpose of deciding whether it is embraced within the call or message.

*Id.* at 60, 161 A. at 704 (quoting *State v. Woollen*, 128 Tenn. 456, 161 S.W. 1006 (1913)).

¶ 7 In the January 18, 1995, proclamation to convene the Special Session on Crime, Governor Ridge called the legislature to consider, among other things, new measures to update Pennsylvania's rape law; reform the Pardons Board process; close loopholes in the state's firearms laws; provide for longer sentences for violent, repeat offenders; strengthen the state's laws relating to juvenile crime; notify communities when a repeat sexual offender is released into the community; enhance protection for crime victims; and provide for the orderly signing of death warrants. It is clear the subject matter of the special session, as proclaimed, was broad and that the governor's call included the request to consider legislation which might help reduce the amount of crime committed in Pennsylvania. The call also sought legislation which might reduce the impact of crime, generally, upon the citizens of this Commonwealth and might increase the rights of victims of crime. Indeed, in his address to the legislature at the opening of the special session, Governor Ridge "dedicated" the special session to crime victims and asserted, as follows,

his view that crime, generally, impacts upon the daily lives of Pennsylvanians in ways that should not be acceptable:

It [the impact of crime] has crept into the most routine decisions of our lives. Indeed, it has begun to chip away at our citizenship. Think about it. What part of town we visit. When we go there. Where we park. Where we walk. If we dare to walk alone. ...Each time this happens, the law-abiding surrender a little more of themselves to the lawless. Each time, we concede a little more of our civil rights. Each time, we lose a little more of our community, our freedom.

¶ 8 It appears the governor's call can be broadly described as a request to enact legislation to ameliorate the impact of crime upon society. In a narrower sense, the call was also a request to "toughen" our criminal statutes.

 ¶ 9 We conclude that appellant's claim, which alleges that the PCRA amendments enacted under the special session were beyond the scope of the call, is meritless. The legislature's consideration of the statute governing post conviction relief and its resultant amendments thereto was proper under the parameters of the governor's proclamation seeking revisions of the criminal statutes of this Commonwealth. The PCRA, which provides a vehicle for a wrongfully convicted person to collaterally challenge his criminal conviction, was certainly not outside the scope of the designated subject matter of the Special Session on Crime but fell squarely within the subject matter designated by the governor for consideration by the legislature. Moreover, it is clear that appellant missapprehends the proper test for constitutionality with respect to his claim that the amendments are void simply because the governor's call did not specifically request the legislature's consideration of post conviction relief issues. As our jurisprudence makes clear, the lack of a specific request for particular legislation in a governor's call does not render uncon-

stitutional the subsequent enactment of specific legislation where that legislation falls within the ambit of the general subject matter of the call. *See Liveright, supra.* Appellant's challenge to the constitutionality of the legislation amending the PCRA is dismissed.

¶ 10 Appellant raises 14 other issues in this appeal which have been treated in a supplemental memorandum filed in conjunction with this opinion. Since we find no merit to any of appellant's claims, we affirm the order which denied his petition for PCRA relief.

¶ 11 Order affirmed.